HANSON BRIDGETT LLP
DIANE MARIE O'MALLEY, SBN 139166
domalley@hansonbridgett.com
SAMANTHA A. BOTROS, SBN 317523
sbotros@hansonbridgett.com
ALEXA F. GALLOWAY, SBN 322080
agalloway@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

Attorneys for MERRILL GARDENS, LLC

# UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RAMONA CHRISTINA HOLGUIN, an individual, on behalf of herself, the State of California, as a private attorney general, and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL GARDENS, LLC; and DOES 1 to 50,<br><br>Defendants. | Case No. 2:22-CV-4686<br><br>**DEFENDANT MERRILL GARDENS, LLC's NOTICE OF REMOVAL AND REMOVAL PURSUANT TO 28 U.S.C. § 1446(a), CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") 29 U.S.C. § 1332(D)**<br><br>(Los Angeles County Superior Court Case No. 22STCV18565) |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF RAMONA CHRISTINA HOLGUIN AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant MERRILL GARDENS, LLC ("Defendant" or "Merrill Gardens") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446 and 1453.  In support thereof, Defendant states as follows:

/ / /

## I. PROCEDURAL BACKGROUND

1. On June 6, 2022, Plaintiff RAMONA CHRISTINA HOLGUIN ("Plaintiff") filed a putative Class and Representative Action Complaint ("Complaint") in the Superior Court of the State of California for the County of Los Angeles, entitled *Ramona Christina Holguin v. Merrill Gardens, LLC*, Case No. 22STCV18565 (the "State Court Action").

2. Plaintiff's Complaint asserted the following eleven causes of action: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) failure to provide rest periods and pay missed rest period premiums; (4) failure to pay meal periods and pay missed meal period premiums; (5) failure to maintain accurate employment records; (6) failure to pay wages timely during employment; (7) failure to pay all wages earned and unpaid at separation; (8) failure to reimburse business expenses; (9) failure to furnish accurate itemized wage statements; (10) unfair competition law, and (11) PAGA penalties.

3. On June 8, 2022, Plaintiff personally served a copy of the Complaint and Summons to Defendant's Agent for Service of Process, C T Corporation System. A true and correct copy of the Complaint that was served on June 8, 2022 is attached as **Exhibit A**, to this Notice of Removal.

4. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings and orders Defendant received in this action. True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal. Defendant has not been served with any pleadings, process, or orders besides those attached. Defendant has answered the Complaint, and a true and correct copy of that answer is attached as **Exhibit C** to this Notice of Removal.

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Goods Corp.*, 811 F. 2d 1336, 1339 (9th Cir. 1987).

## II. VENUE IS PROPER

6. Plaintiff filed the Complaint in the Superior Court for the State of California, County of Los Angeles, which is within this judicial district and division. *See* 28 U.S.C. § 84(a). This Court is thus proper court for removal under 28 U.S.C. § 1441 (a).

## III. LEGAL STANDARD FOR REMOVAL

7. The United States Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), clarified the standards applicable to notices of removal in CAFA cases, confirming a liberal standard in favor of a removing defendant. Specifically, the Supreme Court found that the similarity of language between the removal statute and Rule 8(a) can only mean that the same liberal pleading standards applied to complaints must also apply to notices of removal. *Id.*, at pp. 81-82.

8. The Supreme Court also held in *Dart* that a removing defendant is not required to include evidence with its pleading in order to establish that the elements of federal subject matter jurisdiction are met. *Id*. at pp. 86-87. Only if the Court or another party challenges jurisdiction should the Court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. "In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold … Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. at 89. In addition, there exists no presumption against removal in CAFA cases, because Congress enacted CAFA specifically "to facilitate adjudication of certain class actions in federal court." *Id.*

## IV. STATEMENT OF JURISDICTION

9. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") 29 U.S.C. § 1332(d), which vests the

United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred (100) members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs (28 U.S.C. § 1332(d)).  CAFA authorizes removal of such actions in accordance with 28 U.S.C. §§ 1446 and 1453.  As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## V.   REMOVAL IS TIMELY

10. This Notice of Removal is timely.  Under 28 U.S.C. § 1446(b), a notice of removal of a civil action must be filed within 30 days after service of the summons and complaint.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344, 347-348 (1999)(holding that the 30-day removal period runs from the service of the summons and complaint; mere receipt of the papers unattended by any formal service is insufficient to trigger the removal period).

11. On June 8, 2022, Plaintiff's service on Defendant became effective. Because Defendant filed this Notice of Removal within 30 days of service of this June 8, 2022, this Notice of Removal is timely as a matter of law.

## VI.   PLAINTIFF ASSERTS A CLASS ACTION

12. Plaintiff brings this lawsuit as a class action.  The Complaint itself is titled "CLASS AND REPRESENTATIVE ACTION COMPLAINT," Plaintiff states in the third paragraph that she brings this action "on behalf of herself and the following class: All individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period…," Exhibit A, ¶ 3. Plaintiff further asserts that the Class Members were employed by Defendants during the statute(s) of limitation applicable to each cause of action pleaded in the Complaint.  Exhibit A, ¶ 76.  Accordingly, CAFA applies.  *See Bodnever v. Oreck Direct, LLC*, No. C 604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006)

-4-   Case No. 2:22-CV-4686

18712281.1

DEFENDANT MERRILL GARDENS, LLC's NOTICE OF REMOVAL AND REMOVAL PURSUANT TO 28 U.S.C. § 1446(a), CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") 29 U.S.C. § 1332(D)

(CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under … California Code of Civil Procedure Section 382.")

## VII.   MORE THAN 100 PUTATIVE CLASS MEMBERS

13.   Plaintiff seeks to represent a class of "all individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period" Ex. A, ¶¶ 3, 14.

14.   Although Plaintiff's Complaint does not allege a specific number of persons who meet the proposed class definition, based upon inspection of Defendant's employment records, and the fact that the statute of limitations for the proposed class would go back four years from the date of the filing of the Complaint due to the presence of the Business and Professions Code Claim, *See*, Cal. Bus. and Prof. Code Section 17208 (Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued.") the number of individuals Defendant employed as non-exempt employees in California during the time period from June 6, 2018 through to the present is 3,489 individuals.  *See* **Exhibit D** Declaration of Rich Boberg ("Boberg Decl."), at ¶ 2.  Thus, based upon the claims in the Complaint, the putative class exceeds 100.

## VIII.  DIVERSITY OF CITIZENSHIP

15.   CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

### Plaintiff Is A Citizen Of California

16.   Plaintiff's Complaint states that she was and currently is a "citizen of California residing in the State of California" See Ex. A, ¶ 13. Therefore, Plaintiff is presumptively a citizen of the State of California. *See Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) (finding that removing

party's "jurisdictional allegations, which provided a short and plain statement of the parties' citizenships based on information and belief, satisfied [its] burden of pleading minimal diversity.")

### Defendant Is Not A Citizen Of California

17. Merrill Gardens is a Washington Limited Liability Company ("LLC"), organized as such under the laws of the State of Washington. Boberg Decl. at ¶ 3. Ordinarily, for purposes of diversity jurisdiction, an unincorporated association has the citizenships of all its members. *See Johnson v. Columbia Props. Anchorage, LP.*, 437 F.3d 894, 899 (9th Cir. 2006). However, the "exception to this rule is for class actions brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(10)." *Moss v. Infinity Ins. Co.*, 2015 WL 7351395, at *2 (N.D. Cal. Nov. 20, 2015). CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes. *See Davis v. HSBC Bank Nevada*, N.A., 557 F.3d 1026, 1032 n.13 (9th Cir. 2009)(A. Kleinfield, concurring)("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes").

18. Rather, for purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10*). See also Abrego v. The Dow Chem. Co.*, 443 F. 3d 676, 684 (9th Cir. 2006)("Certain aspects of CAFA, it is true, evidence Congress's intent that the district courts' jurisdiction vis-à-vis certain kinds of actions be broadened rather than restricted. For example . . . under § 1332(d)(10), 'an unincorporated association [is] … deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized,' which departs from the rule that frequently destroys diversity jurisdiction, that 'a limited partnership's [or unincorporated association's] citizenship for diversity purposes can be determined

only by reference to all of the entity's members'"); *Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *5 (S.D. Cal. Mar. 30, 2016)("For CAFA's purposes, [defendant] is a citizen both of the state where it has its principal place of business and the state under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(10).").

19. Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Washington. Boberg Decl. ¶ 3. Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Washington.

20. Further, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Washington. Boberg Decl. ¶ 4. Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Washington.

21. The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id*. at 92-93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

22. Under the "nerve center" test, Washington emerges as Defendant's principal place of business. Defendant's corporate headquarters are located in Seattle, Washington where Defendant's high-level officers direct, control, and coordinate its activities. Boberg Decl., ¶ 5. Defendant's high-level corporate officers maintain offices in Seattle, and many of Defendant's corporate-level functions are performed in the Seattle office. *Id*. Additionally, many of Defendant's

executive and administrative functions, including corporate finance and accounting, are directed from the Settle headquarters. *Id*.

23. The citizenship of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. 28 U.S.C. §§ 1441(a), (b)(1); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition.).

24. Accordingly, minimal diversity under CAFA exists where, as here, Plaintiff, who is a citizen of California, is diverse from Defendant, a citizen of Washington. See 28 U.S.C. §§ 1332(d)(2)(A).

## IX.   THE AMOUNT IN CONTROVERSY FAR EXCEEDS 5,000,000[1]

25. The Class Action Fairness Act's $5,000,000 threshold for the "amount in controversy is not the same as the amount ultimately recovered." *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10- 4280-GHK JCX, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010). Rather, in assessing the amount in controversy, courts must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). After all, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Moreover, when a defendant's calculations are

---

[1] The alleged damage calculations set forth in the instant Notice of Removal are provided for purposes of removal only and based on the presumption of truth to which Plaintiff's allegations are entitled. Defendant denies that Plaintiff or any putative class member is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's claims and their alleged damages at every stage of this case.

"relatively conservative, made in good faith, and based on evidence whenever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." *Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009). As demonstrated below, Defendant's calculations are relatively conservative, made in good faith, based on evidence to the extent possible, and based on reasonable assumptions derived from the Complaint.

26. In calculating the amount in controversy, the claims of class members may be aggregated to determine whether the amount in controversy has been satisfied. 28 U.S.C. § 1332(d)(6).

27. Plaintiff's Complaint does not allege the total amount in controversy. However, as demonstrated herein, Plaintiff's allegations, when accepted as true, place more $5,000,000 in controversy in this lawsuit. By demonstrating that the amount in controversy exceeds the CAFA threshold, Defendant in no way concedes the validity of Plaintiff's claims in any respect or the likelihood that Plaintiff will obtain certification or recover anything.

28. In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate on the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) minimum wage violations; (2) overtime wages violations; (3) failure to provide rest periods; (4) failure to provide meal periods; and (5) failure to reimburse business expenses. Because the amount in controversy for these claims alone satisfy jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates placed in controversy by Plaintiff's other causes of action alleged in the Complaint. That said, Defendant reserves the right to do so in opposition to any remand motion.

/ / /

/ / /

**Alleged Minimum Wage Violations**

29. With regard to Plaintiff's claim for minimum wage violations, Plaintiff broadly alleges that she and the putative class members were entitled to receive at least minimum wages for compensation and Defendant failed to pay Plaintiff and the putative class members at least minimum wages for all hours worked. Ex. A, ¶¶ 26 - 28. Plaintiff's Complaint is devoid of any factual allegations supporting this claim and lacks any specificity, as it fails to even allege how many hours she and the putative class members worked without being compensated at least a minimum wage.

30. Plaintiff alleges that she and other employees were not paid all wages for all hours worked due to Defendant's alleged payroll policies and practices that rounded employees' wages, routinely failed to capture the entirety of the hours worked and was structured in a way that favored underpayment. Ex. A, ¶ 29. While Plaintiff does not allege how much time was not captured or in what way the alleged policy favored underpayment, Defendant conservatively estimates that each potential class member worked off the clock for five minutes each day, which means each employee would incur twenty-five minutes of off-the-clock work for each five-day workweek.

31. In this matter, there is a four-year statute of limitations for this claim. Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208. Between the four (4) year period ranging from June 6, 2018 to July 8, 2022, Defendant employed approximately 3,489 non-exempt employees in California. Boberg Decl., at ¶ 2. Defendant pays its non-exempt employees biweekly. *Id.* at ¶ 6. Accordingly there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of 725,712 workweeks or 362,856 pay periods. Plaintiff's hourly rate was $17.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id.* at ¶ 7.

///

32. A reasonable estimate of the amount in controversy for Plaintiff's unpaid minimum wages claim, at five minutes of unpaid minimum wages each week, is $2,569,020.48 (362,856 [number of pay periods Defendant's 3,489 non-exempt employees collectively worked between June 6, 2018 to July 8, 2022] x $7.08[twenty minutes per week]).  Indeed, the Ninth Circuit and numerous district courts have held, an estimate of at least 30 minutes per class member per week is appropriate in light of Plaintiff's allegations.  *See, e.g., Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week")

### Alleged Overtime Violations

33. With regard to Plaintiff's claim for overtime wage violations, Plaintiff broadly alleges that she and the putative class members were entitled to receive overtime wages for compensation and Defendant failed to pay Plaintiff and the putative class members overtime wages for all hours worked.  Ex. A, ¶ 37.  Plaintiff's Complaint is devoid of any factual allegations supporting this claim and lacks any specificity, as it fails to even allege how many hours she and the putative class members worked without being compensated overtime wages.

34. Plaintiff alleges that Defendants had a practice of failing to pay overtime wages at the proper rate when it actually paid overtime by specifically failing to include all compensation when calculating the regular rate of pay used in overtime calculations and when paying overtime.  Ex. A, ¶ 38.  While Plaintiff does not allege how long she and others spent working off the clock, Defendant conservatively estimates that each potential class member worked an additional one hour of overtime for each period.

35. In this matter, there is a four-year statute of limitations for this claim.  Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208.  Between the four (4) year period ranging from June 6, 2018 to July 8, 2022, Defendant employed approximately 3,489 non-exempt employees in California.  Boberg Decl., at ¶ 2.

Defendant pays its non-exempt employees biweekly. *Id.* at ¶ 6. Accordingly there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of 725,712 workweeks or 362,856 pay periods. Plaintiff's hourly rate was $17.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id.* at ¶ 7.

36. Plaintiffs' allegations, with respect to her overtime claims, do not adequately state the number of hours of overtime worked or the amount of overtime owed. Accordingly, for purposes of these calculations, Defendant assumes Plaintiff and the putative class are only seeking the remaining half-time of their regular rate of pay. Ex. A, ¶¶ 38, 39.

37. A reasonable estimate of the amount in controversy for Plaintiff's unpaid overtime wages claim of one hour of unpaid overtime per pay period. *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly").

38. A reasonable estimate of the amount in controversy for Plaintiff's unpaid overtime wages claim, at one hour of wages per pay period, is $3,084,276 (362,856 [number of pay periods Defendant's 3,489 non-exempt employees

collectively worked between June 6, 2022 to July 8, 2022] x $8.50[half of plaintiff's hourly rate]).

### Alleged Meal Period Violations

39. For every day an employee works six (6) or more hours and the employer fails to provide a 30-minute uninterrupted meal period prior to their fifth of work, or works ten (10) or more hours and the employer fails to provide a second 30-minute uninterrupted meal period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay. Lab. Code § 226.7(c).

40. With respect to Plaintiff's meal period claim, Plaintiff alleges that she and the Putative Class Members were never asked to sign any enforceable document agreeing to an on-duty meal period, were periodically denied timely, off-duty meal periods of at least 30 minutes and/or they were not permitted to take a second meal period. Ex. A, ¶¶ 50-52. And that Defendant failed to provide Plaintiff and the Class with meal period premiums. *Id*. at 53. Plaintiff seeks to recover unpaid meal period premium payments. Ex. A, ¶ 55.

41. In this matter, there is a four-year statute of limitations for this claim. Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208. Between the four (4) year period ranging from June 6, 2018 to July 8, 2022, Defendant employed approximately 3,489 non-exempt employees in California. Boberg Decl., at ¶ 2. Defendant pays its non-exempt employees biweekly. *Id.* at ¶ 6. Accordingly there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of 725,712 workweeks or 362,856 pay periods. Plaintiff's hourly rate was $17.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id.* at ¶ 7.

42. Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal

1  no less than $6,168,552 ($17.00/hour x 362,856 pay periods).

2      43.    Defendant's estimate is very conservative. Defendant assumes only one meal period violation for each two-week pay period, per employee, even though Plaintiff alleges employees had a meal period violation "periodically." *See* Ex. A, ¶ 52.

### Alleged Rest Period Violations

44.    For every day an employee works three and a half (3.5) or more hours and the employer fails to provide at least a 10-minute uninterrupted rest period, or works six (6) or more hours and the employer fails to provide a second at least 10-minute uninterrupted rest period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay. Lab. Code § 226.7(c).

45.    With respect to Plaintiff's rest period claim, Plaintiff alleges that she and the Putative Class Members did not receive compliant, duty-free rest periods for working more than four (4), ten (10) and/or fraction thereof. Ex. A, ¶ 44. Plaintiff seeks to recover compensation for lack of compliant rest period at their regular rate of compensation. Ex. A, ¶ 46.

46.    In this matter, there is a four-year statute of limitations for this claim. Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208. Between the four (4) year period ranging from June 6, 2018 to July 8, 2022, Defendant employed approximately 3,489 non-exempt employees in California. Boberg Decl., at ¶ 2. Defendant pays its non-exempt employees biweekly. *Id*. at ¶ 6. Accordingly there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of 725,712 workweeks or 362,856 pay periods. Plaintiff's hourly rate was $17.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id*. at ¶ 7.

47.    Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged

non-provision of meal periods, the amount in controversy on this claim would equal no less than $6,168,552 ($17.00/hour x 362,856 pay periods).

48. Defendant's estimate is very conservative. Defendant assumes only one rest period violation for each two-week pay period, per employee.

**Alleged Unreimbursed Business Expenses**

49. An employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

50. With respect to Plaintiff's unreimbursed business expense claim, Plaintiff alleges that she and the putative class members did not receive reimbursement for expenses they incurred in direct discharge of their duties, including the costs associated with their personal cell phone. Ex. A, ¶ 59.

51. In this matter, there is a four-year statute of limitations for this claim. Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208. Between the four (4) year period ranging from June 6, 2018 to July 8, 2022, Defendant employed approximately 3,489 non-exempt employees in California. Boberg Decl., at ¶ 2. Defendant pays its non-exempt employees biweekly. *Id.* at ¶ 6. Accordingly there are 26 pay periods per year. During the proposed class period, the potential class members worked a total of 725,712 workweeks or 362,856 pay periods. Plaintiff's hourly rate was $17.00, and is the hourly rate used for all calculations in this Notice of Removal. *Id.* at ¶ 7.

52. Assuming that each potential class member during the limitations period may recover personal cell phone expenses in the conservative amount of $30.00/month ($7.50/week), the amount in controversy for the unpaid business expenses would equal no less than $5,442,840 ($30.00 x 791,586 workweeks).

53.	Defendant's estimate is very conservative.  For purposes of showing the amount in controversy for alleged failure to reimburse expenses related to a personal cell phone, Defendant considered a wide variety of phone plans available, with different costs.  A consumer reports search showed 3 different wireless networks that cost about ~$60.00 for one phone line with the lowest amount of available data.  Defendant estimates that Plaintiff and the putative class' use of a personal cell phone would not be solely for work-related purposes (if at all), thus Defendant conservatively reduced the reimbursement amount down to $30.00.  *See* https://www.consumerreports.org/cell-phone-service-providers/best-low-cost-cell-phone-plans-a8977819742/

### Attorney's Fees

54.	Attorney's fees may also be included in the amount in controversy where the underlying statute authorizes an award of fees. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) overruled on other grounds by *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013).  Here, Plaintiff is seeking attorney's fees with respect to all causes of action. (Exh. A, Compl., at Prayer for Relief at ¶ 15).

55.	The Ninth Circuit has recognized 25% as an appropriate benchmark for attorney's fee awards in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under that benchmark, and based on the demonstrated amount in controversy for causes action one through eight, it is reasonable to place the attorneys' fees in controversy at 25% of the alleged damages, which would equal: $5,895,666.56.

### Plaintiff's Other Claims Further Increase the Amount in Controversy

56.	Plaintiff is also seeking an order enjoining Defendant from acting in derogation of any rights or duties adumbrated in the complaint.  Ex. A., prayer for relief ¶ 16.  Defendant has not yet quantified the costs of compliance with any such order, this would also increase the amount in controversy. *In re Ford Motor*

*Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F.Supp.2d 1151, 1161 (C.D. Cal. 2013) [cost of complying with injunction may be aggregated for CAFA purposes].)

57. Plaintiff's Complaint also seeks "…such other further relief, this Court may deem just and proper." Ex. A, prayer for relief ¶ 17. Although uncertain in amount, this open-ended relief sought by Plaintiff only serves to increase the amount in controversy. *See, Lewis v. Exxon Mobil Corp.*, 348 F. Supp. 2d 932, 932-43 (W.D. Tenn. 2004) [the "open-ended" relief sought by plaintiff, who prayed for "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages" established that her case met the amount in controversy requirement even though she pled in the complaint that she did not assert a claim in excess of $75,000].

58. Accordingly, it is reasonable to assume that the amount-in-controversy in this case would even further exceed $5 million.

**Summary of Amount in Controversy**

59. In sum, the allegations in Plaintiff's Complaint demonstrate that Plaintiff and the putative class place in controversy the following amounts:

| | | |
|---|---|---|
| a. | Minimum Wage Violations: | $2,569,020.48 |
| b. | Overtime Violations: | $3,084,276.00 |
| c. | Meal Period Violations: | $6,168,552.00 |
| d. | Rest Period Violations: | $6,168,552.00 |
| e. | Failure to Reimburse: | $5,442,840.00 |
| f. | Waiting Time Penalties: | Not included |
| g. | Itemized Statements: | Not included |
| h. | Injunctive Relief: | Not included |
| i. | Other Relief: | Not included |
| j. | Civil Penalties under the UCL: | Not included |
| k. | PAGA Penalties | Not included |

| | | |
|---|---|---:|
| | SUB-TOTAL | $23,433,240.48 |
| l. | Attorney's Fees at 25%: | $5,858,310.12 |
| | GRAND TOTAL | $29,291,550.60 |

### X. NOTICE TO STATE COURT AND TO PLAINTIFF

60. Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of Los Angeles. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles as required under 28 U.S.C. § 1446(d).

### XI. CONCLUSION

WHEREFORE, Defendant respectfully requests that this action now proceed against it in this Court as an action properly removed.

DATED: July 8, 2022                             HANSON BRIDGETT LLP


By: ___/S/ Alexa Galloway___
DIANE MARIE O'MALLEY
SAMANTHA A. BOTROS
ALEXA F. GALLOWAY
Attorneys for MERRILL GARDENS, LLC